Jimmy **FRANK**, Petitioner–Appellant,

v.

Frank **BLACKBURN**, Warden, Louisiana State Penitentiary, Respondent–Appellee.

No. 78–3452.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1980.

J. Donice Alverson, New Orleans, La. (Court–appointed), for petitioner–appellant.

Robert Brinkman, Asst. Dist. Atty., Opelousas, La., for respondent–appellee.

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RAN-

DALL, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges *.

FAY, Circuit Judge:

A Louisiana state court jury convicted of Jimmy Frank of armed robbery. A Louisiana state court judge sentenced him to thirty–three years in prison. In a petition for habeas corpus,[1] Frank attacked his conviction on the grounds that certain identification testimony was inadmissible and that the prosecutor's argument referred to Frank's failure to testify. He attacked the sentence on the ground that the trial judge impermissibly increased the term of confinement because Frank rejected a plea bargain offer and elected to stand trial. The federal trial court denied habeas corpus. A panel of this court reversed and remanded the case to the district court for dismissal upon resentencing by the state court, finding that Jimmy Frank was penalized by the state court because he exercised his constitutional right to stand trial. *Frank v. Blackburn*, 605 F.2d 910 (5th Cir. 1979). We decided to rehear the case en banc because of its potentially devastating impact upon the plea bargaining process. A majority of the en banc court now finds that no constitutional rights were violated in the conviction and sentencing of Jimmy Frank. The panel opinion is vacated, and the district court's denial of the writ is affirmed.

Although we are vacating the panel opinion in *Frank v. Blackburn*, we adopt the statement of the facts set forth therein. *See* 605 F.2d at 911–12. In addition, the en banc court adopts the discussions and holdings of the panel set forth in the "Suggestive Identification" and "Prosecutorial Comment" sections of the opinion. *See* 605 F.2d at 912–14. We emphasize, however, that we adopt no portion of the panel opinion pertaining to Jimmy Frank's sentence. We discuss and resolve that issue anew in the light of a thorough examination of the plea bargaining process.

## THE SENTENCE

Jimmy Frank contends that because he elected to stand trial rather than plea bargain, his prison sentence on conviction was increased in violation of the fourteenth amendment. Once before the trial and once during a recess in the prosecution's case, the trial judge conducted a plea bargaining session in his chambers. Both the prosecutor and defense counsel participated in these sessions. On both occasions the judge, in response to a request from defense counsel, personally stated that he would sentence Frank to a period of twenty years confinement in return for a plea of guilty. Frank rejected both offers, stood trial, and was convicted by the jury, whereupon the judge imposed a sentence of thirty–three years in prison. Jimmy Frank alleges that the twenty year sentence offered in exchange for a guilty plea was increased by thirteen years after conviction solely to punish him for standing trial. Jimmy Frank's allegations of judicial vindictiveness warrant further exploration of the record in the case. The validity of those allegations, however, can be better evaluated after careful consideration of the policies, procedures, and purposes underlying the plea bargaining process.

## PLEA BARGAINING IN GENERAL

Plea bargaining is a process of negotiation in which the prosecutor, trial judge, or some other official in the criminal justice system, offers the defendant certain concessions in exchange for an admission of guilt.[2]

---

* Judges Albert Tate, Jr. and Jerre S. Williams did not participate in the en banc consideration of or decision in this case.

1. Jimmy Frank's petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 (1976).

2. This practice is commonly referred to as "plea bargaining," "plea negotiation," "trading out," or the "compromise of criminal cases." Because these phrases tend to suggest that there is something inappropriate about the practice, the more neutral phrases, "plea discussions" and "plea agreements," are frequently used to describe these pretrial discussions and agreements concerning entry of a plea of guilty or *nolo contendere. See, e. g.,* Fed.R.

The concessions offered may relate to the offense charged, the sentence to be imposed, or a variety of other circumstances.[3] The benefit offered by the defendant, however, is always the same: entry of a plea of guilty.

That plea bargaining plays a dominant role in the American criminal justice system is evidenced by the statistics: roughly ninety percent of the criminal defendants convicted in state and federal courts plead guilty rather than exercise their right to stand trial before a court or jury. D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 3 (1966); Alschuler, *Plea Bargaining and Its History*, 79 Colum.L.Rev. 1, 1 (1979). Nevertheless, plea bargaining remains a controversial issue, provoking praise, criticism and extensive debate among legal scholars and practitioners. Judicial pronouncements on plea bargaining indicate that the courts are as sharply split as the commentators over the propriety of negotiating a guilty plea. While most courts have approved the use of plea bargaining, a number of judges have condemned it, maintaining that issues of guilt cannot be settled. *See, e. g., Scott v. United States*, 419 F.2d 264 (D.C.Cir.1969); *Shelton v. United States*, 242 F.2d 101 (5th Cir.), *rev'd en banc*, 246 F.2d 571 (5th Cir. 1957), *rev'd per curiam*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958) (Judge Rives stating for the court in the first *Shelton* opinion that "[j]ustice and liberty are not the subjects of bargaining and barter." 242 F.2d at 113); J. Bond, Plea Bargaining and Guilty Pleas §§ 2.01–.04 (1978); Comment, *The Influence of the Defendant's Plea on*

*Judicial Determination of Sentence*, 66 Yale L.J. 204 (1956) (discussing results of a questionnaire about guilty pleas sent to 240 federal judges).

Notwithstanding the diversity of opinion on the subject, the Supreme Court has repeatedly expressed approval of the plea bargaining process. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Court stated that "[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." 404 U.S. at 260, 92 S.Ct. at 498. The *Santobello* opinion took note of some of the practicalities of plea bargaining:

If every criminal charge were subjected to a full–scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be

---

Crim.P. 11; American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968). We use the terms "plea bargain," "plea agreement," and "plea negotiation" interchangeably because we find all three labels equally descriptive of the underlying process.

**3.** For example, a prosecutor may provide leniency to a defendant's accomplices, withhold damaging information from the court, influence the date for a defendant's trial or sentencing, arrange for a defendant to be

sent to a particular correctional institution, request that a defendant receive credit on his sentence for time served in jail awaiting trial, agree to support a defendant's application for parole, attempt to have detainers from other jurisdictions dismissed, arrange for sentencing in a particular court or by a particular judge, provide immunity for crimes not yet charged, or simply remain silent when his recommendation might otherwise be unfavorable.
Alschuler, *Plea Bargaining and Its History*, 79 Colum.L.Rev. 1, 3 n.11 (1979).

the rehabilitative prospects of the guilty when they are ultimately imprisoned.

404 U.S. at 260–61, 92 S.Ct. at 497–98.[4]

Supreme Court approval of plea bargaining can be traced through a series of cases beginning in 1970. In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), petitioner pleaded guilty to a kidnapping charge to avoid the death penalty. After his conviction, he argued "that it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency and that a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof." 397 U.S. at 750–51, 90 S.Ct. at 1469–70. The Court found Brady's argument unpersuasive.

> We decline to hold … that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities

extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.

*Id.* at 751, 90 S.Ct. at 1470; *accord, Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

One year after *Brady*, the Court, in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), set forth some of the guidelines for fair plea bargaining. The defendant in that case, charged with gambling violations under state law, pleaded guilty after negotiations with the prosecutor, who agreed to make no sentence recommendation. Finding that the prosecutor had failed to uphold his part of the bargain, the Court noted the need for fairness in securing agreement between an accused and a prosecutor.

It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. *Moore v. Michigan*, 355 U.S. 155 [78 S.Ct. 191, 2 L.Ed.2d 167] (1957). Fed.Rule Crim.Proc. 11, governing pleas in federal courts, now makes

---

**4.** *See also Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), where the Court stated:

> The issue we deal with [bargaining for pleas] is inherent in the criminal law and its administration because guilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious–his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages–the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well over three–fourths of the criminal convictions in this country

rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

Of course, that the prevalence of guilty pleas is explainable does not necessarily validate those pleas or the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

A contrary holding would require the States and Federal Government to forbid guilty pleas altogether, to provide a single invariable penalty for each crime defined by the statutes, or to place the sentencing function in a separate authority having no knowledge of the manner in which the conviction in each case was obtained. In any event, it would be necessary to forbid prosecutors and judges to accept guilty pleas to selected counts, to lesser included offenses, or to reduced charges. The Fifth Amendment does not reach so far.

clear that the sentencing judge must develop, *on the record*, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge. The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. *Lynch v. Overholser*, 369 U.S. 705, 719 [82 S.Ct. 1063, 1072, 8 L.Ed.2d 211] (1962); Fed.Rule Crim.Proc. 11. A court may reject a plea in exercise of sound judicial discretion.

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

404 U.S. at 261–62, 92 S.Ct. at 498–99 (footnotes omitted). *See also Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 736 (1977) (federal courts cannot adopt a *per se* rule excluding all possibility that a defendant's representations at the time of his guilty plea were so much the product of such factors as misunderstanding, duress, or misrepresentation as to make that plea a constitutionally inadequate basis for imprisonment); *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (guilty plea held involuntary because defendant was unaware of the elements of the offense to which he pleaded guilty).

While continuing to protect the rights of defendants who plead guilty, the Supreme Court, in recent cases, has further extended the outer limits of permissible plea bargaining practices. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), significantly strengthens the bargaining position of prosecutors seeking guilty pleas. The prosecutor in *Bordenkircher* offered to recommend a five year prison sentence if

defendant Hayes would plead guilt to a forgery indictment. The prosecutor also said that if Hayes did not plead guilty and "save the court the inconvenience and necessity of a trial," he would seek to reindict Hayes under the state's habitual offender act, subjecting Hayes to a mandatory sentence of life imprisonment by reason of his two prior felony convictions. 434 U.S. at 358, 98 S.Ct. at 665. Hayes chose to stand trial, and the prosecutor carried out his threat.

The Supreme Court found no due process violation in the fulfillment of the prosecutor's threat: the decision to reindict Hayes as a habitual offender was simply a legitimate use of available leverage in the plea bargaining process. The prosecutor was not punishing the defendant for exercising his rights; rather, he was presenting Hayes with a permissible range of choices that face any accused contemplating a guilty plea–the certainty of a lesser punishment or the possibility of more severe punishment. Said the Court:

[I]n the "give–and–take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

\*      \*      \*      \*      \*      \*

Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"–and permissible–"attribute of any legitimate system which tolerates and encourages the negotiation

of pleas." It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

434 U.S. at 363–64, 98 S.Ct. at 667–68 (citations omitted); *accord, Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Chaffin v. Stynchcombe*, 412 U.S. 17, 29–31, 93 S.Ct. 1977, 1984–85, 36 L.Ed.2d 714 (1973).

*Bordenkircher* clearly evidences the Supreme Court's acceptance of plea bargaining as an integral part of the criminal justice system. Even Justice Powell, dissatisfied with the result in the case, noted that plea bargaining affords genuine benefits to defendants as well as to society, and that "if the system is to work effectively, prosecutors must be accorded the widest discretion, within constitutional limits, in conducting bargaining." 434 U.S. at 372, 98 S.Ct. at 672 (Powell, J., dissenting). This court, reviewing the plea bargaining case before us, cannot ignore the high court's endorsement of the practice. At the same time, we must be attentive to the distinctions between federal court review of plea bargains arising in state court and federal court review of federal court plea bargains. To this issue we next turn our attention.

## PLEA BARGAINING IN THE FEDERAL AND STATE SYSTEMS

### A. The Federal Rule

■ In the federal system, plea bargaining practices are governed by the requirements of Rule 11[5] of the Federal Rules of Criminal Procedure. This rule, which has undergone a series of revisions and amendments since its adoption in 1944,[6] sets forth a complex but comprehensive scheme for plea negotiations and the acceptance of guilty pleas in federal court. The rule requires a detailed inquiry into the intelligence, accuracy, and voluntariness of the guilty plea as well as the compilation of a complete record of all plea agreement proceedings under the rule. *See, e. g.*, Fed.R. Crim.P. 11(c), (d), (f), (g). Specifically, the rule instructs the trial judge to ascertain the knowing and voluntary character of the plea by addressing the defendant personally in open court, informing him of the elements of the charge against him and of the minimum and maximum penalties fixed by law. The judge must explicitly warn the defendant of the trial rights waived by pleading guilty, and he must question the defendant about the existence of any circumstances, such as government force or threats, that would endanger the voluntariness of his plea. Fed.R.Crim.P. 11(c).

After investigating the intelligent and voluntary nature of the defendant's decision to plead guilty, the court must require the government and the defendant to reveal any plea agreements they have made. Fed.R.Crim.P. 11(c)(2). The defendant is asked whether he has received any promises other than those contained in the plea agreement. Fed.R.Crim.P. 11(d). If the parties have engaged in plea bargaining, Rule 11(e)(2) gives the district judge discretion to accept or reject the proposed agreement, thereby eliminating plea agreements which fail to meet judicially evolved standards of fairness and propriety. If a given agreement is accepted, it must be reflected in the judgment and sentence imposed by the court. If an agreement is rejected, the defendant must be allowed to withdraw his plea. *Id.* A verbatim record is to be made of all the plea proceedings mandated by Rule 11. Fed.R.Crim.P. 11(g).

With respect to the actual plea negotiations, Rule 11(e) states that the attorney for the government and the attorney for the

---

**5.** The full text of Fed.R.Crim.P. 11, 18 U.S.C.A. (Supp.1980), is set out in Appendix I to this opinion.

**6.** Rule 11 was amended in 1966, 1975, and most recently in 1979. Each set of amendments has further improved the procedures for taking guilty pleas, thus enhancing the finality of convictions based on them. *See* Note, *Rule 11 and Collateral Attack on Guilty Pleas*, 86 Yale L.J. 1395, 1397–1404 (1977).

defendant (or the defendant when acting pro se) may engage in discussions with a view toward reaching a plea agreement. The rule expressly sanctions four commonly used types of plea bargains.[7] In exchange for the defendant's plea of guilty or nolo contendere, the government may (1) reduce the charge to a lesser or related offense, (2) move for dismissal of other charges, (3) agree to recommend or not oppose a particular sentence, or (4) agree that a given sentence is an appropriate disposition of the case. Once a plea agreement has been reached by the parties, the terms of the agreement are presented to the judge in open court, on the record, for his acceptance or rejection. Fed.R.Crim.P. 11(e)(2).

■ It should be emphasized that while Rule 11 requires the trial judge to play an active role in insuring that a defendant's guilty plea is voluntary, uncoerced, and made with knowledge of the consequences, the rule specifically prohibits the judge from assuming the role of an active negotiator in the plea bargaining process. *See* Fed.R.Crim.P 11(e)(1). This prohibition against judicial participation in plea negotiations avoids the "chilling effect" such participation might have on a defendant's decision to either accept a plea bargain or go to trial. *Blackmon v. Wainwright*, 608 F.2d 183 (5th Cir. 1979). Several valid reasons for keeping the trial judge out of plea discussions have been noted:

> (1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by

the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent.

American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating To Pleas of Guilty, Commentary § 3.3(a).

■ This court has previously expressed its agreement with Rule 11's prohibition of judicial involvement in plea bargains, stating that "[a] plea agreement by the trial judge and the defendant may carry the connotation of an unseemly bargain between a malefactor and Justice. The judge, almost all–powerful in his sentencing capacity, has the duty of protecting an accused's constitutional rights as well as the duty of protecting society's interest in law enforcement." *Brown v. Beto*, 377 F.2d 950, 957 (5th Cir. 1967); *accord, United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y.1966). We have also recognized, however, that Rule 11 "states a standard for federal courts, not necessarily a constitutional inhibition." *Blackmon v. Wainwright*, 608 F.2d 183, 184 (5th Cir. 1979). Consequently, Rule 11's unqualified prohibition of judicial involvement in plea bargaining will not necessarily invalidate every instance of judicial participation in the negotiation of a guilty plea in state court. *See Federal Review of State Court Plea Bargains, infra.*

B. The Standard of Review in Federal Plea Bargaining Cases

The evolution of Rule 11 into a minutely detailed scheme for the entry of guilty pleas in federal court has made it increasingly difficult for the appellate courts to determine whether the failure to comply with any one specific Rule 11 requirement constitutes reversible error. Shortly after the amendment of Rule 11 in 1966, the Supreme Court held in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), that full compliance with Rule 11 was mandatory. Responding

---

**7.** Although many other types of plea bargains have been used in the past, their legitimacy under the federal rule remains uncertain. *See*

J. Bond, Plea Bargaining and Guilty Pleas 19–21 (1978); Note, *Rule 11 and Collateral Attack on Guilty Pleas*, 86 Yale L.J. 1395, 1404 (1977).

to the failure of the lower courts to insist that the rule be strictly observed, the Court said:

> We ... conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

394 U.S. at 471–72, 89 S.Ct. at 1173–74. The mandate of *McCarthy v. United States* was clear: if a district court failed to comply with Rule 11 in accepting a guilty plea, the plea would be set aside and the case remanded for another hearing at which the defendant could plead anew.

■ *McCarthy* established an unequivocal requirement of strict compliance with Rule 11 *in its form at the time of that opinion.* We noted, however, in *United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), that when *McCarthy* was decided, "all the rule then treated were the values lying at the heart of the rule's concerns: absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea.... The rule is now at such a level of complexity as to render letter–perfect compliance with each of its many provisions very difficult indeed." 604 F.2d at 939. Recognizing that a failure by the trial court to address any one or more of the

rule's three core concerns set out in *McCarthy* still requires automatic reversal, we concluded in *Dayton* that the changes made in Rule 11 subsequent to the *McCarthy* decision justify some departure from the standard of review set forth in that case.

> An iron rule of review directed at technical and literal compliance by our brothers on the district bench with the post-*McCarthy* elaborations of Rule 11, somewhat in the spirit of the exclusionary rule's attempt to deter police misconduct, seems to us inappropriate. We have held that the rule must be fully and faithfully followed, and we do not doubt that the district courts of this circuit will make all efforts to follow our mandate. The question here is not whether such efforts should be made but how we should appraise them when they are. Nothing from above requires us to view fallings off from post–*McCarthy* additions to the rule as meriting automatic reversal, and we decline to do so. Where each of Rule 11's core inquiries has been reasonably implicated in the rule's required colloquy, we will examine its treatment to determine whether it has been sufficiently exposed to inquiry and determination. If so, we will not disturb the result. As for post–*McCarthy* additions to the rule—many, if not all, of which require determinations of fact that can scarcely be described as ultimate—nothing would prevent the trial court from making each the subject of a factfinding. Should it do so, we would review them in accordance with the clearly erroneous rule and that of harmless error, as in the case of any other finding by a trial judge sitting in a criminal case where a jury has been waived....

604 F.2d at 940 (footnotes omitted). *See also United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (holding that a conviction based on a guilty plea is not subject to collateral attack when all that can be shown is a technical violation of Rule 11). The *Dayton* opinion further specifies that although we will review deviations from Rule 11 under a clearly errone-

ous–harmless error standard, the trial judge will not be required to make formal findings about each factual determination required by the rule. Since the rule clearly sets out what the trial judge must find before accepting a guilty plea, "we are warranted in regarding the court's acceptance of the plea as a positive finding on each, reviewable under the clearly erroneous standard." *Id.* at 940–41.

The detailed requirements of Rule 11 and this court's opinion in *United States v. Dayton* leave little doubt about how federal trial courts should conduct guilty plea hearings and how we will review those proceedings. Unfortunately, Rule 11 only sets the standard for federal courts; it does not necessarily establish a constitutional prohibition. *Blackmon v. Wainwright,* 608 F.2d 183 (5th Cir. 1979). The federal rule thus offers little guidance in determining when a guilty plea entered in state court must be set aside. We rely instead on an entirely different and far more limited, standard when we review the validity of a state court plea bargain, looking only to see if any constitutional rights have been violated. *See* 28 U.S.C. § 2254 (1976); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (stating that focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea.)

### C. Federal Review of State Court Plea Bargains

■ A state court may not accept a guilty plea unless the defendant enters it voluntarily and with a complete understanding of the nature of the charge and the consequences of his plea. The general voluntary–intelligent standard for plea taking is rooted in the due process clauses of the Constitution and is therefore applicable in both state and federal courts. *See McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Although the states must comply with this standard, they need not observe the particular procedures used in the federal courts. So long as the federal courts purport only to construe Rule 11

rather than the due process clauses of the Constitution, state courts are not bound to follow the federal plea–taking procedures thereby established. *See Waddy v. Heer,* 383 F.2d 789 (6th Cir. 1967), *cert. denied,* 392 U.S. 911, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968) (14th Amendment does not obligate the states to adhere to Rule 11 procedures); J. Bond, Plea Bargaining and Guilty Pleas 88–89 (1978).

■ Because Rule 11 is not binding on the states, a federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process. If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review. *See, e. g., Williams v. Wainwright,* 604 F.2d 404 (5th Cir. 1979); *Fisher v. Wainwright,* 584 F.2d 691 (5th Cir. 1978). Conscious of the wide range of constitutional plea procedures available to the state courts, we turn now to the procedures invoked in Jimmy Frank's case.

### JIMMY FRANK'S PLEA BARGAIN

Petitioner Jimmy Frank alleges that his constitutional rights were violated when, after his conviction by a jury, the state court judge imposed a sentence in excess of that which the judge had previously offered him in exchange for a guilty plea. According to Frank, the increased sentence was imposed to punish him for exercising his right to stand trial and thus is evidence of judicial vindictiveness.

■ We agree wholeheartedly with Frank's assertion that a defendant cannot be punished *simply* for exercising his constitutional right to stand trial. *See Cousin v. Blackburn,* 597 F.2d 511 (5th Cir. 1979), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1343, 63 L.Ed.2d 779 (1980); *United States v. Underwood,* 588 F.2d 1073 (5th Cir. 1979); *Baker v. United States,* 412 F.2d 1069 (5th Cir. 1969), *cert. denied,* 396 U.S. 1018, 90

S.Ct. 583, 24 L.Ed.2d 509 (1970). We do not agree, however, that the mere imposition of a longer sentence than defendant would have received had he pleaded guilty automatically constitutes such punishment. The Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused. *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). It is equally clear that a defendant is free to accept or reject the "bargain" offered by the state. Once the bargain–whether it be reduced charges, a recommended sentence, or some other concession–is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system. If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

In the instant case, Jimmy Frank argues that his increased sentence does not stem solely from the denial of leniency offered in plea negotiations. Rather, he alleges that the judge imposed the thirty–three year sentence out of sheer vindictiveness, to retaliate against the defendant for going to trial. Having carefully reviewed the record in this case, we find no evidence to support Frank's allegations of vindictiveness.

The record reveals that prior to trial, the judge, the assistant district attorney, and defense counsel attended a pretrial conference held in the judge's chambers. There "the prosecution systematically presented the factual merits of this case against the defendant to the Judge, together with the pertinent criminal history of the defendant (rap sheet), and, after due consideration, the presiding Judge proposed to the defense attorney that a sentence of twenty years would be imposed in exchange for a plea of guilty. The defendant elected to pretermit a guilty plea and exercised his right to the trial." Stipulation, State Record, vol. I, at 49. A trial by jury took place on April 24 and 25, 1975. During a trial recess, defendant's counsel met a second time with the judge and the assistant district attorney in chambers. The defense attorney requested the judge to propose a prospective sentence in exchange for a guilty plea at that time. The judge again proposed a sentence of twenty years, and the defendant elected to continue his right to a trial. On May 2, 1975, after his conviction by the jury, defendant Jimmy Frank was sentenced by the judge to thirty–three years at hard labor without benefit of parole, probation or suspension of sentence. *Id.* at 49–50. Although no record was made of the sentencing proceedings,[8] the trial judge's per curiam opinion sets forth some of his reasons for the sentence, along with his general views of plea bargaining.

> The Court gets the impression that Counsel for the Defendant is trying to give the [Louisiana] Supreme Court the idea that defense counsel is ordinarily dragged into Chambers, and blackmailed into either pleading guilty for a smaller sentence' or receiving a greater sentence if he stands trial. This is not the case at all. The Court is constantly being asked by defense counsel to make an evaluation of a sentence if the accused pleads guilty. At this time, the Court has only a sketchy idea of the circumstances of the alleged crime, and must depend on the oral assertions of defense counsel and the District Attorney, and whatever statements, records, and other documents are available

---

**8.** Although Louisiana's Code of Criminal Procedure art. 843 (1974) mandatorily required that the original sentence hearing be recorded, the court inadvertently failed to have such a recording made. *See State v. Frank*, 344 So.2d 1039, 1045 (La.1977) (Tate, J., concurring in part, dissenting in part.)

at this time. Also, at this time the Judge is aware that defense counsel are looking for the minimum sentence, or lower limit, the Court will permit on a guilty plea, or even a finding of guilty. In this case, which was armed robbery, the Court would not permit imposition of a sentence of less than twenty years, regardless of recommendations by the District Attorney, or pleas of the defense counsel. It is said generally in this jurisdiction that the general sentence for armed robbery is a minimum of forty years. The undersigned has never and will never subscribe to an arbitrary minimum sentence for any crime. In armed robbery cases, the undersigned, because of the threat of violence, and because of the Court's fear of repetition of this serious crime, and because the Court acknowledges and agrees with the heavy sanctions the Legislature has imposed for this crime,--taking all of this into consideration, together with the threat to human life,--the Court has generally felt that these people should be confined until the chance of repetitive threat to human life has passed; and has hoped that keeping these people confined until they are in their 60's and 70's will perhaps cool their blood and lessen the chance of repetition of this crime.

The undersigned usually sentences these people to keep them confined until they reach 65 years or older, feeling that by that time they can probably be returned to society.

Secondly, the Court has always hoped that guilty pleas manifest a feeling of repentance, which the Court hopes would be a deterrent to the individual committing this crime again, and has taken that into sentencing consideration.

\* \* \* \* \* \*

It certainly seems unfair to this Court that lawyers will explore a path that is nationally accepted, and then, after deciding not to utilize the sentence proposed, challenge the Constitutionality of this method. . . .

In this case, . . . the Court must say it does not remember the details of the particular plea bargaining that took place in this matter. The Court vividly remembers, however, the callous attitude of the accused, not only in Court, but in the facts as they unfolded on the trial of this matter, with regard to the threat to human life he made, and the fear he generated in the minds of his victims.

State Record, vol. I, at 51–53.[9]

A panel of this court found that the record in this case demonstrated "that the judge lacked reason to increase defendant's sentence over what he proposed in the plea bargaining sessions. . . . With regard to the conduct of the defendant during the course of the robbery and his subsequent arrest, [the] testimony at the preliminary hearing was virtually identical with [the] testimony at trial. Thus, prior to the start of the trial itself, the judge had a virtually complete picture of the events on the night of the robbery." *Frank v. Blackburn*, 605 F.2d 910, 915 (5th Cir. 1979). We find the panel's view of the record too narrow. While the general information in the hands of the judge at the time of plea bargaining

---

**9.** In reference to plea bargaining, the trial judge stated:

[I]t is this Court's opinion that while [plea bargaining] is legal and constitutional, it is reprehensible, and the undersigned urges the Supreme Court to speak out against it in its decisions. The Court feels that it is all to the advantage of the accused, as it lends itself to minimize the sanctions imposed by law, and is a device to escape the consequences of the criminal act. The Court understands how easy it is for our overworked District Attorney to recommend a lesser sentence than he would ordinarily strive for, in exchange for a guilty plea,--the District Attorney's reward being in time saved and expediting his docket. However, as stated above this Court feels it is a device which is all to the unfair advantage of the accused; it should be characterized as unfair to society; and this Court feels the Supreme Court should bring the prestige of that Court to bear in putting an end to it. This Court does not feel that it is immoral nor unconstitutional, but feels it is unfair to society and to the victims of crime.

If it is unconstitutional, then the jails will and should be emptied, because of its employment on a national scale.

State Record, vol. I, at 54.

may have been the same as at sentencing, we find persuasive the trial judge's assertion that "the Court had more graphic, descriptive and detailed evidence of the crime and the character of the individual at the time of sentencing." Trial Court's Per Curiam, State Record, vol. I, unnumbered page. Even if the trial provided no additional evidence of character, the mere fact that Jimmy Frank refused to acknowledge his guilt and showed no willingness to assume responsibility for his conduct may have led the judge to conclude that this defendant lacked potential for rehabilitation thus justifying the imposition of a greater sentence than that offered in exchange for a guilty plea.

The panel deciding this case recognized that a judge may consider a wide variety of factors in determining the proper sentence, and that "we usually accept a judge's statement that he did not increase the sentence vindictively." 605 F.2d at 915. The panel also recognized that "[t]he mere fact that Frank received a longer sentence upon conviction than was offered at a pretrial hearing does not conclusively show vindictiveness." *Id.* at 915. Relying upon *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the panel nevertheless sought to establish an analogous rule preventing the imposition of any sentence greater than that offered by the court in exchange for a plea of guilty. *Id.* at 915.

■ We find the rule of *North Carolina v. Pearce* to be completely inapplicable to post–plea bargain sentencing proceedings. *Accord, Martin v. Blackburn*, 606 F.2d 92, 93 (5th Cir. 1979), *cert. denied*, 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980) ("it is highly questionable whether *Pearce* applies to plea bargaining situations"). As the panel pointed out, *Pearce* held that a defendant must not be penalized for asserting his right to a new trial by the imposition of a longer sentence than he received at the first trial. The *Pearce* rule applies *only* to sentencing after a retrial, and even

in that situation, "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). We find nothing in the record of the present case to indicate a "realistic likelihood of vindictiveness" on the part of the trial judge. The sentencing which followed the trial upon the merits saw the trial judge in possession not only of more of the detailed facts of the offense itself, but of the flavor of the event and the impact upon any victims. *See United States v. Derrick*, 519 F.2d 1, 4 (6th Cir. 1975). The thirty–three year sentence imposed after the judge had been afforded the advantage of a full–scale trial on the facts was not excessive or exorbitant, and the thirteen year increase over the twenty–year sentence offered in plea negotiations "falls far short of evidencing a vindictive attitude or desire to punish the [defendant] for . . . going to trial. *United States v. Cunningham*, 529 F.2d 884, 889 (6th Cir. 1976). We have no reason to attribute Jimmy Frank's increased sentence to anything other than the trial judge's more accurate appraisal of the circumstances after hearing the full disclosure of the facts at trial. *See id.* at 889.

In upholding the sentence imposed on Jimmy Frank after his refusal to plead guilty, we note with approval the procedures recommended by the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968), (hereinafter Pleas of Guilty).[10] The A.B.A. standards, which have been frequently cited by this court, *see, e. g., Brown v. Beto*, 377 F.2d 950 (5th Cir. 1967), recognize that "[i]t is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when the interest of the public in the effective administration of criminal justice would thereby be served. Pleas of Guilty § 1.8(a). The A.B.A. standards specifically state that

10. *See* Appendix II for the full text of sections 1.8 and 3.3 of the A.B.A. standards. We include these particular sections because of their relevance to the issues raised in this case.

the disparity in treatment between defendants who plead guilty and defendants who do not "is *not* to be accomplished by the imposition of excessive penalties on those who stand trial." Pleas of Guilty, Commentary § 1.8(b).

> The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the rehabilitative, protective deterrent or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove his guilt at trial rather than to enter a plea of guilty or nolo contendere.

*Id.* § 1.8(b). The Commentary, however, recognizes that certain justifications may exist for imposing a greater penalty on a defendant who stands trial.

> It has been contended, of course, that if any disparity exists between the defendant who stands trial and other defendants, the former has received excessive punishment. Comment, 66 Yale L.J. 204, 220 (1956). That view is rejected here. The Advisory Committee believes that there is an essential difference between system *A*, in which defendants who go to trial receive the greatest punishment justifiable under accepted principles of penology and some defendants who plead guilty or *nolo contendre* receive something less because of the circumstances surrounding their plea, and system *B*, in which disparity results from giving defendants who stand trial greater punishment than can be justified.

Pleas of Guilty, Commentary § 1.8(b): Jimmy Frank's case clearly falls within "system A." There is no question that the crime justified the punishment. The disparity in the sentences offered before and after conviction resulted not from judicial vindictiveness or desire to punish, but only from the judge's reappraisal of all the circumstances, after the trial was completed.

Because the panel opinion placed special emphasis on the trial judge's *personal* involvement in the plea discussions in this case, we note that with respect to the responsibilities of the trial judge, the A.B.A.

standards take the position that judicial participation in plea discussions is undesirable. *See* Pleas of Guilty § 3.3(a). Unlike Fed.R.Crim.P. 11, however, the standards recognize the propriety of procedures which, when requested by the parties and consented to by the trial judge, will also allow a greater degree of certainty when the proposed concessions involve the sentence or the dismissal of other charges before the court. Section 3.3(b) authorizes the trial judge to allow the prosecuting attorney and defense counsel to indicate to him in advance of the plea why they agree that certain concessions would be appropriate. The judge is then permitted to indicate whether he will concur in these concessions if the information in the presentence report is consistent with the representations made to him.

> This procedure, it must be emphasized, does not contemplate participation by the judge in the plea discussions. The judge only becomes involved after the parties have reached agreement, and thus there would appear to be little basis upon which the defendant or counsel could conclude that the judge is attempting to force a certain result upon the parties. Moreover, the judge does not initiate the conference; he is brought into the matter prior to tender of the plea only upon the request of the parties.

Pleas of Guilty, Commentary, § 3.3(b).

In the instant case, there is no record of the actual plea discussions which took place in the trial judge's chambers. The stipulation of the parties suggests, however, that it was defendant's counsel who asked the judge for a sentence proposal; presumably the prosecutor was willing to go along with the judge's proposal. Although we do not wholeheartedly approve of the plea proceedings which took place in the judge's chambers, we do not find the participation in this case to be constitutionally prohibited. *Compare United States ex rel. McGrath v. LaVallee*, 319 F.2d 308 (2d Cir. 1963) (conference in chambers was ordered by the judge without any apparent request by either defendant or prosecutor.)

## CONCLUSION

Jimmy Frank's case comes before this court on a petition for habeas corpus, a civil proceeding in which the burden is on the petitioner to show a violation of his constitutional rights. In this case, however, the petitioner has failed to present even a scintilla of evidence to support his claim that the judge vindictively increased the sentence offered but rejected in plea negotiations in order to punish him for choosing to stand trial.

As we indicated above, we do not look favorably upon the trial judge's participation in the plea negotiations which transpired in his chambers. In reviewing this case, however, our task is only to determine whether constitutional rights were violated. The federal rule which expressly forbids the court from participating in plea bargaining states a standard for federal courts only, and not a constitutional inhibition. *Blackmon v. Wainwright*, 608 F.2d 183 (5th Cir. 1979). In the instant case, neither the plea negotiations nor the sentence imposed violated any of Jimmy Frank's fourteenth amendment rights.

Plea–bargains have become an accepted mode of resolving criminal trials. The procedure offers obvious benefits to all parties involved. In exchange for his guilty plea, the defendant obtains a reduction of charges or a guaranteed sentence. The prosecutor eliminates one more case from the crowded dockets and is free to move on to the disposition of other matters. The system punishes the offender while promoting judicial and prosecutorial economy, thereby serving the public's interest in the effective administration of criminal justice. In the case before us today, the defendant was offered a guaranteed twenty year sentence in exchange for a guilty plea. Not satisfied with the proposed bargain, he chose to take his chances and stand trial. The defendant now argues that he should be given the fruits of the abandoned bargain–in spite of his plea of "not guilty." The rules of the game do no permit such a result, however. Once the defendant elects to go to trial, all bets are off. Jimmy Frank gambled and lost; having refused the plea bargain, he cannot now expect to receive the benefits of that abandoned agreement after conviction. *Cousin v. Blackburn*, 597 F.2d 511 (5th Cir. 1979), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1343, 63 L.Ed.2d 779 (1980). As this court has previously stated, "it stretches our credulity to think that one who declines to plead guilty with a ... sentence acceptable to the Court should nevertheless be given the benefits of a bargain available to, but rejected by, him." *United States v. Resnick*, 483 F.2d 354, 358 (5th Cir.), *cert. denied*, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973).

AFFIRMED.

## APPENDIX I

### RULE 11. Pleas

(a) **Alternatives.** A defendant may plead not guilty, guilty, or nolo contendere. If a defendant refuses to plead or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

(b) **Nolo Contendere.** A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has

APPENDIX I—Continued

already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

**(d) Insuring That the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

**(e) Plea Agreement Procedure.**

**(1) In General.** The attorney for the goverment and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of others charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case. The court shall not participate in any such discussions.

**(2) Notice of Such Agreement.** If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

**(3) Acceptance of a Plea Agreement.** If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

**(4) Rejection of a Plea Agreement.** If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

**(5) Time of Plea Agreement Procedure.** Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

**(6) Inadmissibility of pleas, plea discussions, and related statements.** Ex-

APPENDIX I—Continued

cept as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(A) a plea of guilty which was later withdrawn;

(B) a plea of nolo contendere;

(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

**(f) Determining Accuracy of Pleas.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

**(g) Record of Proceedings.** A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

## APPENDIX II

American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968).

*Standards*

## PART I. RECEIVING AND ACTING UPON THE PLEA

1.1 Pleading by defendant; alternatives.

(a) A defendant may plead not guilty, guilty, or (when allowed under the law of the jurisdiction) nolo contendere. A plea of guilty or nolo contendere should be received only from the defendant himself in open court, except when the defendant is a corporation, in which case the plea may be entered by counsel or a corporate officer.

(b) A defendant may plead nolo contendere only with the consent of the court. Such a plea should be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

1.2 Pleading to other offenses.

Upon the entry of a guilty or nolo contendere or after conviction on a plea of not guilty, the defendant's counsel may request permission for the defendant to enter a plea of guilty or nolo contendere as to other crimes he has committed which are within the jurisdiction of coordinate courts of that state. Upon written approval of the prosecuting attorney of the governmental unit in which these crimes are charged or could be charged, the defendant should be allowed to enter the plea (subject to the court's discretion to refuse a nolo contendere plea). Entry of such a plea constitutes a waiver of the following: (i) venue, as to crimes committed in other governmental units of the state; and (ii) formal charge, as to offenses not yet charged.

1.3 Aid of counsel; time for deliberation.

(a) A defendant should not be called upon to plead until he has had an opportunity to retain counsel or, if he is eligible for appointment of counsel, until counsel has been appointed or waived. A defendant with counsel should not be required to enter a plea if his counsel makes a reasonable

APPENDIX II—Continued

request for additional time to represent the defendant's interests.

(b) A defendant without counsel should not be called upon to plead to a serious offense until a reasonable time, set by rule or statute, following the date he was held to answer. When a defendant without counsel tenders a plea of guilty or nolo contendere to a serious offense, the court should not accept the plea unless it is reaffirmed by the defendant after a reasonable time for deliberation, set by rule or statute, following the date the defendant received the advice from the court required in section 1.4.

1.4 Defendant to be advised by court.

The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

(a) determining that he understands the nature of the charge;

(b) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury; and

(c) informing him:

(i) of the maximum possible sentence on the charge, including that possible from consecutive sentences;

(ii) of the mandatory minimum sentence, if any, on the charge; and

(iii) when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment.

1.5 Determining voluntariness of plea.

The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea.

1.6 Determining accuracy of plea.

Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea.

1.7 Record of proceedings.

A verbatim record of the proceedings at which the defendant enters a plea of guilty or nolo contendere should be made and preserved. The record should include (i) the court's advice to the defendant (as required in section 1.4). (ii) the inquiry into the voluntariness of the plea (as required in section 1.5), and (iii) the inquiry into the accuracy of the plea (as required in section 1.6).

1.8 Consideration of plea in final disposition.

(a) It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when the interest of the public in the effective administration of criminal justice would thereby be served. Among the considerations which are appropriate in determining this question are:

(i) that the defendant by his plea has aided in ensuring the prompt and certain application of correctional measures to him;

(ii) that the defendant has acknowledged his guilt and shown a willingness to assume responsibility for his conduct;

(iii) that the concessions will make possible alternative correctional measures which are better adapted to achieving

APPENDIX II—Continued

rehabilitative, protective, deterrent or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;

(iv) that the defendant has made public trial unnecessary when there are good reasons for not having the case dealt with in a public trial;

(v) that the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct;

(vi) that the defendant by his plea has aided in avoiding delay (including delay due to crowded dockets) in the disposition of other cases and thereby has increased the probability of prompt and certain application of correctional measures to other offenders.

(b) The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the rehabilitative, protective, deterrent or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove his guilt at trial rather than to enter a plea of guilty or nolo contendere.

PART II. WITHDRAWAL OF THE PLEA

2.1 Plea withdrawal.

(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.

(i) A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations therein, and is not necessarily barred because made subsequent to judgment or sentence.

(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

(iii) The defendant may move for withdrawal of his plea without alleging that he is innocent of the charge to which the plea has been entered.

(b) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

2.2 Withdrawn plea not admissible.

A plea of guilty or nolo contendere which is not accepted or has been withdrawn should not be received against the defendant in any criminal proceedings.

PART III. PLEA DISCUSSIONS AND PLEA AGREEMENTS

3.1 Propriety of plea discussions and plea agreements.

(a) In cases in which it appears that the interest of the public in the effective administration of criminal justice (as stated in section 1.8) would thereby be served, the prosecuting attorney may engage in plea discussions for the purpose of reaching a plea agreement. He should engage in plea discussions or reach a plea agreement with the defendant only through defense counsel, except when the defendant is not eligible for or does not desire appointment of counsel and has not retained counsel.

(b) The prosecuting attorney, in reaching a plea agreement, may agree to one or more

APPENDIX II—Continued

of the following, as dictated by the circumstances of the individual case:

(i) to make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or nolo contendere;

(ii) to seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or nolo contendere to another offense reasonably related to defendant's conduct; or

(iii) to seek or not to oppose dismissal of other charges or potential charges against the defendant if the defendant enters a plea of guilty or nolo contendere.

(c) Similarly situated defendants should be afforded equal plea agreement opportunities.

3.2  Relationship between defense counsel and client.

(a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.

(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and of considerations deemed important by him or the defendant in reaching a decision.

3.3  Responsibilities of the trial judge.

(a) The trial judge should not participate in plea discussions.

(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. If the trial judge concurs but the final disposition does not include the charge or sentence concessions contemplated in the plea agreement, he shall state for the record what information in the presentence report contributed to his decision not to grant these concessions.

(c) When a plea of guilty or nolo contendere is tendered or received as a result of a prior plea agreement, the trial judge should give the agreement due consideration, but notwithstanding its existence he should reach an independent decision on whether to grant charge or sentence concessions under the principles set forth in section 1.8.

3.4  Discussion and agreement not admissible.

Unless the defendant subsequently enters a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.

PART I. RECEIVING AND ACTING UPON THE PLEA

1.1  Pleading by defendant; alternatives.

(a) A defendant may plead not guilty, guilty, or (when allowed under the law of the jurisdiction) nolo contendere. A plea of guilty or nolo contendere should be received only from the defendant himself in open court, except when the defendant is a corporation, in which case the plea may be entered by counsel or a corporate officer.

(b) A defendant may plead nolo contendere only with the consent of the court. Such a plea should be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administrative of justice.

*Commentary*

Section 1.1 (a)

The first sentence states the alternatives available to the defendant. Federal Rule of

APPENDIX II—Continued

Criminal Procedure 11 provides that "the court may refuse to accept a plea of guilty," and some state legislation and rules are in accord. The precise meaning of this language is uncertain, but it has been said that "the plea should not be refused without good reason." *McCoy v. United States*, 363 F.2d 306 (D.C.Cir.1966). The omission from the above standard of the judge's authority to refuse a guilty plea is deliberate. It is elsewhere provided in these standards that the court should not accept a guilty plea until the defendant has been properly advised (section 1.4) and the court has determined the plea to be voluntary (section 1.5), and that judgment upon the plea should not be entered unless the court is satisfied that there is a factual basis for the plea (section 1.6).

HILL, Circuit Judge, with whom KRAVITCH, FRANK M. JOHNSON, Jr., REAVLEY and THOMAS A. CLARK, Circuit Judges, join, dissenting:

Respectfully, I dissent. If a judge punishes a criminal defendant because the defendant declines to plead guilty and, instead, avails himself or herself of the constitutionally guaranteed right to a trial, such action is unconstitutional. The fact that such punitive measure is presented in the context of plea bargaining does not make it lawful.

No guilty plea was entered in this case. Therefore, we are examining the reverse side of the coerced plea situation. It is not contended that petitioner was unlawfully coerced into pleading guilty. It is alleged that he was punished, by enhanced sentence, because he would not accommodate the criminal justice system. He insisted upon his constitutionally guaranteed right to trial. Two efforts had been made—one before trial and one during trial—to obtain a guilty plea in petitioner's case. The judge participated in each of the discussions. The judge announced, on each occasion, that the sentence would be confinement for twenty years upon a conviction based upon a guilty plea. Instead, the conviction was upon a jury verdict. The same judge who had found and announced that a twenty year sentence would have been appropriate had petitioner pleaded guilty sentenced petitioner to thirty-three years confinement after trial.

Our majority flatly holds:

Even if the trial provided no additional evidence of character, the mere fact that Jimmy Frank refused to acknowledge his guilt and showed no willingness to assume responsibility for his conduct may have lead the judge to conclude that this defendant lacked potential for rehabilitation thus justifying the imposition of a greater sentence than that offered in exchange for a guilty plea.

(At 885). I view this holding as jurisprudence foreign to our own and contrary to our Constitution. I do not dispute that there are lands in whose courts it is necessary that an accused confess that of which he is charged in order to avoid inappropriately increased punishment for the additional antisocial act of putting the accuser to its proof. I do dispute that in our system the mere fact that an accused refuses to plead guilty to the state's charge is a punishable offense.

We receive this case cloaked in the often controversial garb of what is known as "plea bargaining." Of the many forms of that method of resolving disputes between the executive and defendants, the one here presented is "sentence bargaining."[1]

Plea bargains based upon the sentence to be imposed provoke great controversy and may yet be the most helpful to the proper administration of justice. In most cases it is the sentence which concerns the defendant most. The resolution of the uncertain-

---

1. Note three to the opinion for our majority (taken from Alschuler, *Plea Bargaining and Its History*, 79 Colum.L.Rev. 1, 3 n.11 (1979)) suggests other bargains, not directly related to sentence, which may be struck between the executive and the defendant. While I have serious questions that the prosecutor may properly agree to "withhold damaging information from the court" the summary is otherwise illuminating. *See United States v. Avery*, 589 F.2d 906, 909 (5th Cir. 1979) (Hill, J., dissenting).

ty inherent in the offended statutes' maximum allowable punishment into certainty as to an appropriate sentence for the particular defendant guilty of the specific offending acts may provide the basis for resolution of all other issues.

For me, I must indulge in some investigation of this practice—before I can appraise the particular happenings giving rise to the case before us. I embark upon that investigation because, as a distinguished jurist wrote some nine decades ago, "When the right point of view is discovered, the problem is more than half solved."[2]

## I. *The Right Point of View*

Hardly anyone who seriously contemplates the role of courts in dispute resolution would deny that settlement of disputes, freely made by well–informed, well–advised parties to the disputes is to be commended. Courts exist to resolve those disputes which cannot be appropriately resolved otherwise and the availability of courts is some assurance that neither party to a dispute need accept an inappropriate resolution.

In some cases, what has been agreed upon between parties cannot be effectuated until the court passes upon its appropriateness. The agreement reached by a guardian *ad litem* for a minor or otherwise incompetent ward has historically required review by the court before it binds the parties. Custody agreements between litigating parents of children of disrupted marriages, stockholder derivative suit settlements, some compromises by trustees in bankruptcy, and agreeable terminations of class actions require that a judicial officer investigate and affirm that the agreements are appropriate. Sentences to be imposed on defendants convicted upon pleas of guilty are, I submit, other such cases. The mere fact that court review in such cases is required does not mean that the settlements are discouraged. Agreeable resolutions of this sort serve the parties and serve the administration of justice. Often such resolutions conserve great additional invest-

ments of capital funds and expense disbursements from the public. They also save the disputing parties from incurring unnecessary and often great costs, inconveniences, and uncertainties. To suggest that settlements are somehow evil would be like positing that cures of physical problems through clinical therapy are to be avoided if surgery be available. Courtrooms must be available in courthouses, and surgical amphitheatres are a part of hospitals, but recourse should be had to neither if proper results can be obtained without their use.

I submit that the benefits of agreeable resolution of disputed issues extend to disputes between the executive and citizens charged with crime if agreements are reached through proper procedures. Further, criminal cases can be resolved through negotiation without involving threats by the court to punish those who choose trial.

In the settlement of civil cases and disputes referred to earlier, some practices are worth noting:

1. Negotiations are carried on between parties with adverse interests, one to the other.

2. While it cannot be denied that settlement of such cases is beneficial to the court as an institution and to its presiding judge, the time, efforts and facilities of which would otherwise be devoted to trials, the judge is not one of the adversaries. The judge is neutral, neither adverse to nor advocate for, either party.

3. During negotiations, but before resolution, demands and offers are proposed differing from the ultimate arrangement upon which agreement is reached.

4. Negotiations involve proposals coupled with threats. An offer to concede a position by one of the adversaries is necessarily coupled with a threat to return to that position should the concession not result in agreement.

2. *Ellison v. Georgia Railroad Co.*, 87 Ga. 691, 706–707, 13 S.E. 809, 813 (1891) (Bleckley, C. J.).

5. Nevertheless, when the process has been concluded, the product of it is endorsed by both parties to the dispute as the appropriate result, all things being considered. Thus, the former disputants become mutual advocates of the settlement.

6. In those cases where court approval is required, the settlement is presented to the court, by both former disputants, as the appropriate resolution of all the issues given due consideration to all legitimate interests.

7. Where the advocates of those competing interests have performed properly, the settlement is appropriate and the court will so find by its approval. Where one has been lacking in attention, effort or skill, the inappropriate resolution reflecting such shortcomings will be recognized by the court's rejection.

A civil case is commenced by the filing of a petition or a complaint setting out, among other things, an *ad damnum*. The demand is seldom inadequate! Realistically, it is not expected that ultimate recovery will be so great as the demand—though none can assure the defendant that it will not. Even in cases of apparent liability, cautious defendants will not permit the case to go into default. Defensive pleadings are filed, and preparations are made to urge whatever may properly be urged to defeat the claim.

When such a case is settled, the defendant, in effect, agrees to change its position from one of no liability to a confession of liability—but not liability for the *ad damnum* set out in the action. Instead the defendant withdraws defenses *if the amount it pays be limited to the certain amount fixed by the agreement.*

In pure theory, where there is no reasonable expectation of defeating the asserted liability, a defendant would do as well to default and appear only to contest damages. Prudence usually dictates, however, that it not open the floodgates until assurance has been obtained as to how much water will rush through!

When proceedings are commenced against a person charged with crime, the assertion is made that the defendant is guilty and the maximum punishment which may be exacted is set forth in the statute. In many cases, it is not realistically expected that, upon conviction by a jury verdict or a guilty plea, the maximum penalty would be imposed–though none can assure the defendant that it will not. Even in cases where guilt is apparent, cautious defendants often will not enter a guilty plea as their first response to the accusation or indictment.

Often, the prosecuting attorney advocating the interests of the public and the defendant, personally or by counsel, advocating the particular interests of the defendant, can, within the maximum penalty provided by law, arrive at an *appropriate* resolution of the case. It seems proper and constructive in such cases for the defendant to be permitted to withdraw his defenses if the consequences be limited to those certain consequences fixed by the agreement. It remains for the court to pass upon the appropriateness of the agreed sentence, but the judge has the benefit of the product of the negotiations. If one advocate or the other has been less than able, the inappropriateness of the agreement can be detected and the agreement disapproved.

I emphasize that the purpose of the negotiations is to reach agreement upon an appropriate sentence. While it may properly be said that the process involves the offer of concessions to the defendant, the ultimate concession on the part of the prosecutor is to abandon the inherent uncertainty of advocating the maximum sentence permitted under the law and to join with the defendant in advocating a certain sentence, arrived at through negotiation, as the appropriate one in the particular case. The prosecutor has the right to advocate even an inappropriately harsh sentence. The concession is the giving up of that right. The prosecutor has no right to the imposition of the maximum sentence, so he cannot concede any such right in the bargaining process. The defendant has the absolute right to advocate his innocence. By agree-

ing to plead guilty, he concedes that right. If he be guilty, he has no right to a judgment of acquittal, and his plea agreement is not a concession of any such right. Properly conducted, plea bargaining involves the concession by each adversary of his right to advocate to uncertain result in exchange for certainty. That certainty ought to be as to an appropriate sentence. It ought not involve the offer of inappropriate leniency to a defendant, in derogation of the prosecutor's duty to society, nor the threat of inappropriate punishment should the defendant decline to plead. The prosecutor, alone, cannot make such an inappropriate offer or threat. The prosecutor cannot control sentencing. The judge decides what the sentence shall be.

Central to our obtaining the right point of view of this case is that plea bargaining was not between the legitimate adversaries, the executive represented by the prosecutor and the accused represented by defense counsel. The judge, whose proper role demands that he be adverse to neither, entered into the negotiations. He was given a description of the facts and circumstances of the crime charged and of the defendant sufficient unto him for the determination of an appropriate sentence.[3] It must have been sufficient for the judge proceeded, in his judicial capacity, to state that, upon conviction based on a plea of guilty, he would impose sentence of twenty years confinement.

Presumably, as judge of the court, he determined in this particular case that a twenty year sentence was appropriate. Our majority holds that the judge can vary his determination of appropriateness solely upon whether or not the defendant elects to stand trial. That makes the judge an advocate of guilty pleas, and a most powerful advocate in the bargain. I cannot agree.

My disagreement, however, would not make the practice unavailable to our colleagues in the state judicial systems. Only if the practice offends the Constitution would it be forbidden. I conclude that it does.

From that point of view, which I believe to be the right one, let us review the precedents.

## II. The Trial Judge and Plea Bargaining

In no way am I challenging the constitutional propriety of plea bargaining. Rather, my problems begin with the majority's definition of plea bargaining.

> Plea bargaining is a process of negotiation in which the prosecutor, *trial judge*, or some other official in the criminal justice system offers the defendant certain concessions in exchange for an admission of guilt.

(At 875.) (Emphasis added.)

To my knowledge, neither the Supreme Court, see, e. g., Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), nor this circuit, see, e. g., Brown v. Beto, 377 F.2d 950 (5th Cir. 1967), has ever so defined plea bargaining. To the contrary, participation in the plea bargaining process has been sharply limited to the accused and the prosecutor.

In *Brown v. Beto, supra,* Judge Wisdom, writing for the panel, concluded that "[p]roperly safeguarded plea discussions and plea agreements between an accused and a *prosecutor* are consistent with the fair administration of justice." *Id.,* at 956 (Emphasis in original.) He *further* concluded that "[t]he trial judge should not participate in plea discussions." *Id.,* at 957, *citing,* American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 3.3(a) (App. Draft, 1968). The Supreme Court has

---

**3.** A pre–trial conference, attended by the presiding Judge, Assistant District Attorney, and defense attorney, was held in Chambers. At that conference

> ... the prosecution systematically presented the factual merits of this case against the defendant to the Judge, together with the

pertinent criminal history of the defendant (rap sheet), and, after due consideration, *the presiding Judge proposed* to the defense attorney that a sentence of twenty years would be imposed in exchange for a plea of guilty. State Record, Vol. I, at 49. (Emphasis added.)

described plea bargaining in similar language.[4]

The disposition of criminal charges by agreement *between the prosecutor and the accused* sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged.

*Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (Emphasis added.)

There is good reason for the exclusion of the court from plea bargain negotiation. Plea bargaining has been described as "give–and–take negotiation ... between the prosecution and defense, which arguably possess relatively equal bargaining power." *Bordenkircher v. Hayes*, 434 U.S. 357, 362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978), *quoting, Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1969) (opinion of Brennan, J.).

Equal bargaining power is essential to constitutionally valid plea bargaining. Indeed, the Supreme Court has stated that "plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher v. Hayes*, 434 U.S. at 363, 98 S.Ct. at 668, *quoting, Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1969). Unless this mutual advantage exists the system breaks down; bargaining becomes coercion.

Of course, Jimmy Frank went to trial so there is no allegation of a coerced plea.[5] Coercing a plea, however, is only one way in which a trial judge may violate the Constitution by intruding into the plea bargaining process. Here, we are confronted with another. Specifically, we must decide under what circumstances a judge may impose a harsher penalty following conviction when he has previously "proposed" an appropriate

sentence in exchange for a plea of guilty. I can come to no other conclusion but that *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) should control the outcome.

III.  *The Applicability of Pearce*

At the outset, the essence of *Pearce* must be made clear. It was recently articulated by the Supreme Court.

The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* [*Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)] lay not in the possibility that a defendant might be deterred from the exercise of a legal right, [citations omitted] but rather in the danger that the State might be retaliating against the accused for lawfully attacking his convictions.

*Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978).

Likewise, the due process violation in this case is not based on the possibility that Jimmy Frank was deterred from exercising his constitutional right to trial, but rather on the danger that the State might be retaliating against Jimmy Frank for lawfully choosing to exercise his right to trial.

I wholeheartedly agree with the majority "that the mere imposition of a longer sentence than [the] defendant would have received had he pleaded guilty does not automatically constitute unconstitutional punishment." (At 883.) Indeed, in *Pearce* the Supreme Court expressly rejected the notion that there exists an absolute constitutional bar to the imposition of a more severe sentence upon retrial. *Id.*, 395 U.S. at 723, 89 S.Ct. at 2079.

As the Court noted, however, the existence of retaliatory motivation is extremely difficult to prove. *Id.* at 725, n.20, 89 S.Ct. at 2080. Hence, the Court in *Pearce* required that whenever a judge imposes a

---

4. It is puzzling that the majority quotes this language. (At 876.)

5. The facts of this case do not require us to determine to what extent a trial judge may constitutionally participate in the plea bargain-

ing process. Here, it is enough to say that his participation has triggered the necessity for the constitutional protection announced in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear on the record so that the constitutional legitimacy of the increased sentence may be fully reviewed. *Id.*, at 726, 89 S.Ct. at 2081. The reasons for enhancement must be based "upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original proceeding." *Id.* A brief review of *Pearce* and its progeny vividly illustrates that the very same constitutional considerations present in *Pearce* are present here.

In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court decided the applicability of *Pearce* to Kentucky's two–tiered system of criminal adjudication. Kentucky allows a misdemeanor defendant convicted in an inferior trial court to seek a trial *de novo* in a court of general jurisdiction. The appellant in *Colten* argued that the Constitution prevented the court of general jurisdiction, after trial *de novo*, from imposing a sentence in excess of that imposed in the court of original trial. The court rejected the *Pearce* analogy. The Court found that in contrast to *Pearce*, the court that imposed the increased sentence after retrial in *Colten* was not the one whose original judgment had prompted an appellate reversal; thus, there was little possibility that an increased sentence on trial *de novo* could have been motivated by personal vindictiveness on the part of the sentencing judge.

In *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the applicability of *Pearce* to Georgia's jury sentencing system was urged. Upon retrial following the reversal of his original conviction, the defendant in *Chaffin* was reconvicted and sentenced to a greater term than had been imposed by the initial jury. The Court again focused on the issue of vindictiveness in holding that *Pearce* was not dispositive. It noted that the second jury was completely unaware of the original sentence, and thus could hardly have sought to "punish" Chaffin for his successful appeal. Moreover, the jury, unlike a judge who had been reversed on appeal, had no stake in the

prior conviction or any motivation to discourage criminal defendants from seeking appellate review.

*Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), focused on prosecutorial conduct in a two–tier system like that found in *Colten*. It found *Pearce* applicable because there was a "realistic likelihood of vindictiveness" on the part of the prosecutor. 417 U.S. at 27, 94 S.Ct. at 2102. Specifically, it held that due process prevented a prosecutor's reindictment of a convicted misdemeanant on a felony charge after the defendant had exercised his right to appeal the misdemeanor conviction and thus to obtain a trial *de novo*. The Court underscored the prosecution's "considerable stake" in discouraging the appeal. *Id.*

In a discussion which is helpful in resolving this case the Court noted:

> There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendants' exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be free of apprehension of such a retaliatory motivation on the part of the sentencing judge."

*Id.*, at 28, 94 S.Ct. at 2102, *quoting, North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969).

Several lessons emerge from these cases. First, under a *Pearce* analysis it is not necessary to demonstrate "actual retaliatory motivation." As previously discussed, that would be virtually impossible. Rather, the court should focus on the presence or absence of a "realistic likelihood of vindictiveness." In assessing such a likelihood, the Court has focused on those imposing the second sentence or taking the second action.

Where a different judge of a different court, *Colten v. Kentucky, supra,* or a different jury, *Chaffin v. Stynchcombe, supra,* impose the new sentence the possibility of vindictiveness is remote; hence no due process violation. On the other hand, where the same judge is imposing both the first and second sentence, *North Carolina v. Pearce, supra,* or the same prosecutor's office writing both the first and second indictment, *Blackledge v. Perry, supra,* the likelihood of vindictiveness is sufficient to invoke the protection of due process.

*Chaffin v. Stynchcombe, supra,* draws this distinction sharply.

Thus, the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self–vindication. Similarly, the jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.

*Id.,* 412 U.S. at 27, 93 S.Ct. at 1983.

In the instant case the trial judge proposed a sentence of twenty years to defendant's counsel in exchange for a guilty plea. In so doing, he impaired his impartiality.

*See* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 3.3(a) (App.Draft 1968); Note, *Plea Bargaining and the Transformation of the Criminal Process,* 90 Harv.L.Rev. 564, 584 (1977). In effect he became a third bargainer with a well–defined position.[6] He had a "personal stake" in the process being resolved his way and therefore a "motivation to engage in self–vindication." Finally, he had an "institutional interest" in imposing punishment through the sentencing process to discourage what he may well have viewed as a meritless trial. *See Chaffin v. Stynchcombe,* 412 U.S. at 27, 93 S.Ct. at 1983. In short, the very same indicia of vindictiveness that were present in *Pearce* are present here.

It should be made clear that I am not, as *Pearce* did not, presuming that the trial judge was vindictive. Rather, the "realistic likelihood" that he could have been compels the rule that he must affirmatively state his reasons for imposing a harsher sentence.

IV. *The Majority's Treatment of Pearce*

The majority avoids *Pearce* by flatly declaring that it is "completely inapplicable to post–plea bargain sentencing proceedings."[7] (At 885.) If such a case were before us I might well agree. In this case,

---

**6.** Confronted with a similar situation, Judge Weinfeld described the judicial role as follows:

A judge's prime responsibility is to maintain the integrity of the judicial system; to see that due process of law, equal protection of the laws and the basic safeguards of a fair trial are upheld. The judge stands as the symbol of evenhanded justice . . . .

*United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966). Clearly, when the judge adopts an adversarial position in the plea bargaining process this role is compromised.

**7.** This statement is said to be supported by *Martin v. Blackburn,* 606 F.2d 92 (5th Cir. 1979), *cert. denied* 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980). While *Martin* does support the statement, in its context, it nowhere touches upon any issue pertinent to the case here under consideration.

In Martin the petitioner pled guilty pursuant to a plea agreement after his initial conviction was reversed on appeal and he was awaiting retrial. The plea agreement was the exclusive product of negotiations between the prosecution and the defense. There were no allegations that the trial judge impermissibly partici-

pated in the plea bargaining process. Rather, Martin contended that the 24-year sentence imposed following his guilty plea was actually more severe than his original life sentence. The court rejected this argument holding that "appellant [could] receive no greater sentence than he received following the original conviction." 606 F.2d at 93.

We have seen that, in complete accord with *Pearce,* a defendant who has obtained a new trial after conviction *may* face harsher sentencing after retrial. Thus, it is not at all inconceivable that, while awaiting retrial, a plea bargain might be reached providing for a greater sentence. It would, if appropriate, take into account facts discovered since the first sentence. The *Martin* court was not faced with such a situation; the bargained sentence was not so severe as the original sentence.

I am unable to see how *Martin* offers us any guidance at all in deciding the result of a judge's offering to sentence a defendant to one term of confinement if convicted on a guilty plea and then imposing a greater term upon conviction after trial.

however, the trial judge has entered the plea bargaining process as an adversary; hence, we do not have a simple "post–plea bargaining sentencing proceeding."

*Bordenkircher v. Hayes, supra,* relied on extensively by the majority, supports our position. Referring to *Pearce* and *Perry* the Court states:

> In those cases the Court was dealing with the State's *unilateral imposition of a penalty upon a defendant* who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give–and–take negotiations common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power." [Citation omitted.]

434 U.S. at 362, 98 S.Ct. at 667 (Emphasis added.)

The issue here is whether or not a "unilateral imposition of a penalty upon a defendant" occurred when the judge announced his "second" sentence. This case has nothing to do with the "give–and–take negotiation common in plea bargaining between the *prosecution* and *defense*." Rather, our task is to evaluate the constitutionality of the trial judge's entry into that process.[8] In sum, if *Pearce* could be distinguished it certainly would not be by reference to plea bargaining situations involving only the accused and the prosecution.

### V. *The Record*

I agree with the panel "that the judge lacked reason to increase defendant's sentence over what he proposed in the plea bargaining sessions." 605 F.2d at 915. Stated differently, there is not sufficient "objective information concerning identifiable conduct on the part of the defendant" as required by *Pearce* to impose a harsher sentence.[9]

The majority opinion discusses a number of subjects which might be taken as finding that there existed sufficient reasons, not earlier known to the trial judge, for increasing the sentence. It is clear, however, that its affirmance of the district court finally rests upon the following:

> Even if the trial provided no additional evidence of character, the mere fact that Jimmy Frank refused to acknowledge his guilt and showed no willingness to assume responsibility for his conduct may have led the judge to conclude that this defendant lacked potential for rehabilitation thus justifying the imposition of a greater sentence than that offered in exchange for a guilty plea.

(At 885.)

I submit that a judge may, in some cases, find the contrite attitude of a defendant, expressed by acknowledging guilt and by other things, worthy of consideration in fixing a sentence. But the election to stand trial rather than plead guilty may not be punished by the judge who has sought to persuade the defendant to bargain away that election.[10] Only if the record contains

---

**8.** The majority's failure to appreciate the significance of the trial judge's involvement in this case has resulted in a lengthy analysis of plea bargaining. For example:

> Once the bargain–whether it be reduced charges, a recommended sentence, or some other concession–is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purpose of the plea bargaining system. If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

I have no problem with this statement–assuming the bargaining is between the accused and the prosecution. Here, the rejected offer was proposed by the judge. Hence, we have a totally different set of issues.

**9.** It should also be noted that if the trial judge's reasons for imposing a harsher sentence than he initially proposed were affirmatively stated, as required by *Pearce*, disputes concerning the record would be minimized.

**10.** How the quoted part of the opinion is modified by a later statement is unclear. The majority says, "The sentencing which followed the trial upon the merits saw the trial judge in possession not only of more of the detailed facts of the offense itself, but of the flavor of the event and the impact upon any victims."

articulable facts as required by *Pearce* can a reviewing court be certain that such punishment has not been imposed in the form of an enhanced sentence.

## VI. *Conclusion*

I agree with the majority that this case could have a potentially devastating impact upon the plea bargaining process. If a third negotiator, the trial judge, is added to the plea bargaining process its constitutional foundation will collapse. The Supreme Court has repeatedly emphasized that plea bargaining is based on negotiation between two adversaries with equal bargaining power. The addition of a third participant, especially one entrusted with ultimately sentencing the defendant, can not be reconciled with due process.

There is no precedent approving the offer of concessions, coupled necessarily with the threat of their withdrawal, by the trial judge. Where the courts have approved plea bargaining by "the State," they involve plea bargaining by the executive. The trial judge is not "the state" in a case styled "*State v. John Doe.*"

In this case, the specific constitutional danger is that a trial judge who has "proposed" a sentence in exchange for a guilty plea will punish the defendant for refusing to accept the bargain. A judge who makes such a proposal is no longer detached and neutral; he has acquired a "personal stake" in the outcome. As in *Pearce*, "due process . . . requires that [the] defendant be freed of apprehension of . . . a retaliatory motivation on the part of the sentencing judge. "*Id.*, 395 U.S. at 729, 89 S.Ct. at 2090. Hence, whenever a judge imposes a more severe sentence upon a defendant than he originally proposed, the reasons for doing so must be based on "objective information concerning identifiable conduct on the part of the defendant" which came to his attention after the original proposal. These reasons must be recorded at the time of sentencing. As I find the record devoid of such reasons I would reverse the District Court.

(At 885). If this means that the judge did, indeed, receive more articulable information after his 20 year "offer," and that the *Pearce*

RUBIN, Circuit Judge, with whom RANDALL, Circuit Judge, joins, dissenting.

All plea bargaining, whether for reduced sentences, elimination of counts or for lesser offenses, involves negotiation for an admission of guilt to a criminal offense in return for a promise of benefits from the state. Such bargaining compromises both the state's interest in law enforcement and the individual's personal liberty. It is tolerable only because of the exigencies of our law enforcement mechanisms and of our system of criminal courts. However, save for the fact that the result is negotiated, plea bargaining is fundamentally different from the compromise of civil litigation. The values, the stakes and the interest of society are all different. *See* Rubin, How We Can Improve Judicial Treatment of Individual Cases Without Sacrificing Individual Rights: The Problems of the Criminal Law, *The Pound Conference: Perspectives on Justice in the Future* (A. Leo Levin & R. Wheeler, eds. 1976), *reprinted* in 70 F.R.D. 79, at 177, 183–86 (1976), and the authorities cited therein. Therefore, I cannot join in Part I of my brother Hill's dissent.

I agree fully, however, with his analysis in Parts II, III, IV and V and the conclusion he reaches. A trial judge who joins in sentence bargaining enters the contest with infinitely greater bargaining power than the accused. He is seldom completely neutral: absent public interest in the trial of a particular case, it is in his interest to dispose of cases without trial and, thus, to clear his docket with minimal effort. If he may offer the defendant a deal in return for a guilty plea, and then, when this proffer is rejected, impose a greater sentence, without stated and justifiable reasons, he not only exerts coercive pressure on the accused but affects detrimentally the administration of justice in his court. The criminal defense cogniscenti will quickly learn that, when this judge's proffer is rejected, the defendant, if convicted, will pay a higher price. It is a denial of due process for the judge thus to stain his robes.

standards were met, I would dissent only by reason of a different reading of the record.