Paul Wesley was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged" and the trial court sentenced him to 10 years' imprisonment in the penitentiary. *Page 1157 
Ann Broughton testified that her husband, A.G. Broughton, and his brother own and operate a general merchandise store in Perdue Hill, Alabama. On July 15, 1982 she arrived at the store at approximately 7:15 a.m. to begin work. At approximately 8:00 a.m. the appellant entered the store and bought some sweet rolls. At this time her husband was working in the back of the store.
The appellant entered the store a second time that morning and bought a can of brake fluid. Approximately five minutes after the appellant left the store, two men came in the store. When the two men entered the store, one of them walked behind the counter to the point where she was working, grabbed her, and began spraying "mace" on her. Her husband heard the "commotion" in the store, stood up and asked what was going on. At this point one of the men fired a pistol and the men ran out the door. Mrs. Broughton stated that the time of this incident was approximately 9:45 a.m.
Mrs. Broughton stated that she had known the appellant for approximately 10 years and that he had done business at the store during that time. She further stated that she did not see the appellant with the two men who entered the store.
A.G. Broughton testified that on the morning of July 15, 1982, he was in the store's office talking on the telephone when he heard a "commotion" around the cash register. He stood up and asked what was going on and "the Jones boy" shot at him and ran out the door.
Carrie Mae Calhoun testified that she knew the appellant. On the morning the store was robbed, the appellant, Iruby Lee Jones and Floyd English came to her home, arriving between 8:00 and 9:00 a.m. The men arrived in Paul Wesley's car. They came into her home and sat on her porch drinking whiskey for approximately 45 minutes. The men then left in Wesley's vehicle.
Edward Tucker testified that he went to Carrie Mae Calhoun's house on the morning of the robbery. While he was there he saw the appellant, Jones, and English sitting on Calhoun's porch.
Carrie Mae Calhoun was recalled to the stand and stated the afternoon before the day of trial, the appellant came to her house. They talked about the case and the appellant told her to testify that he had not been at her home on the morning of the robbery. He told her to testify that only Jones and English had been at her home that day.
Iruby Lee Jones testified that he is serving time for armed robbery in connection with the incident on July 15, 1982. On the Sunday before the robbery, the appellant went to Atmore and talked with Floyd English. On Monday Jones and English drove to the appellant's home and the three men went to rob the store but there were too many people in the store. Jones and English returned to the appellant's home on Thursday, July 15, 1982 at approximately 6:30 a.m. The appellant arrived at his home that morning around 7:15 a.m. The appellant took the men to the store at that time but they did not rob the store because there were people there. They then drove to Carrie Mae Calhoun's where they sat and drank a bottle of whiskey. After approximately 45 minutes they left Calhoun's and went back to the store. The appellant parked his car near the store and went inside and bought some brake fluid. The appellant returned to the car, drove off a short ways, then told Jones and English "now is the time" to rob the store.
Jones and English got out of the car and went inside the store. English grabbed Mrs. Broughton and sprayed her with mace. Mr. Broughton then came out of the back of the store and Jones fired a pistol. Jones and English then ran out of the store, got in the car with appellant, and went to appellant's house.
Paul Wesley testified that he went to the Broughton's store on two occasions the day of the robbery. He denied that he ever went to Atmore to talk with Floyd English. He denied robbing the store and he denied having been with Jones and English on the *Page 1158 
morning of the robbery. He said that he went to Carrie Mae Calhoun's house the morning of the robbery, but he was not with Jones and English. He further stated that on the two occasions he went to Broughton's store he was alone.
Appellant then called a number of witnesses who testified that appellant had a good reputation for truth and veracity in the community.
 I
The appellant contends that he was convicted on the uncorroborated evidence of an accomplice and as such the trial court erred in failing to exclude the evidence and to grant a motion for judgment of acquittal.
We agree with the appellant that one may not be convicted on the uncorroborated testimony of an accomplice. However, "[s]uch corroborative evidence does not have to be very strong, or even sufficient to support a conviction, but merely must logically tend to link the accused with the offense. Miller v. State, [290 Ala. 248, 275 So.2d 675 (1973)], supra." Ex parte Scott v.State, 460 So.2d 1371, 1373 (Ala. 1984); Jackson v. State,451 So.2d 435 (Ala.Crim.App. 1984). "It is not necessary that such evidence be direct and conclusive; circumstantial evidence from which the guilt of the defendant can reasonably be inferred is sufficient. Merriweather v. State, 364 So.2d 374 (Ala.Crim.App. 1978), cert. denied, 364 So.2d 377 (Ala. 1978)." McConnell v.State, 429 So.2d 662, 666 (Ala.Crim.App. 1983); Craig v. State,376 So.2d 803 (Ala.Crim.App.), cert. denied, 376 So.2d 807
(Ala. 1979); Ware v. State, 409 So.2d 886 (Ala.Crim.App. 1981), writ quashed, 409 So.2d 893 (Ala. 1982).
"`Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Bridges v. State, 52 Ala. App. 546, 295 So.2d 266
(1974); Dykes v. State, 30 Ala. App. 129, 1 So.2d 754 (1941). Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. . . . In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration.'" (Citations omitted). Ware, supra at 891.
"Sufficient corroboration of testimony of an accomplice may be furnished by a tacit admission by defendant, by suspicious conduct of defendant, and association of defendant with accomplice, or by defendant's proximity and opportunity to commit the crime." Early v. State, 392 So.2d 548 (Ala.Crim.App. 1980) cert. denied, 392 So.2d 551 (Ala. 1981); Ware, supra;Yarber v. State, 437 So.2d 1319 (Ala.Crim.App. 1981), reversed on other grounds, 437 So.2d 1330 (Ala. 1983), on remand,437 So.2d 1337 (Ala.Crim.App. 1983). Further, "in determining the sufficiency of corroborative evidence testimony the entire conduct of an accused within reasonable time limits of the date of the offense may be examined." Fuller v. State, 34 Ala. App. 211,215, 39 So.2d 24, 27, cert. denied, 252 Ala. 20,39 So.2d 29 (1949); Jacks v. State, 364 So.2d 397 (Ala.Crim.App.), cert. denied, 364 So.2d 406 (Ala. 1978).
The testimony in this case reveals that the Broughton store was robbed by Iruby Lee Jones and Floyd English. Jones testified that the appellant was an accomplice in this robbery. Ann Broughton stated that the appellant was in her store two times on the morning of the robbery. The appellant first entered the store at approximately 8:00 a.m. Between 9:30 and 9:45 a.m., the appellant reentered the store and bought a can of brake fluid. Approximately five minutes after appellant left, Jones and another man came into the store and committed the crime.
Carrie Mae Calhoun testified that on the morning of the robbery the appellant, Jones, and English came to her home between 8:00 a.m. and 9:00 a.m. The three men sat on her front porch and drank whiskey for approximately 45 minutes. They then left her home in appellant's car.
Edward Tucker testified that he observed the appellant, Jones, and English *Page 1159 
sitting on Calhoun's porch the morning of the robbery.
Carrie Mae Calhoun was recalled to testify and she stated that on the day before trial the appellant came to see her. Appellant told Calhoun to testify that only Jones and English had been at her house the morning of the robbery and that he was not there that day.
Iruby Lee Jones testified in detail of appellant's involvement in the robbery. On the morning in question Jones and English met the appellant at his home. The three men left appellant's home and proceeded to the store in order to rob it. Appellant got out of the car and went in the store, only to return saying there were too many people inside. They then drove to Calhoun's house where they sat around and drank whiskey for approximately 45 minutes. They then left Calhoun's home and went back to the store. Appellant went in the store and came back to the car. They drove a short distance and appellant stopped the car and told Jones and English that it was a good time to rob the store. Jones and English went into the store, committed the crime, and came back to appellant's car and they then drove to appellant's house.
Clearly the evidence in this case was sufficient to reasonably infer this appellant's involvement in the crime at issue. The trial judge was not in error and properly submitted the evidence to the jury.
 II
Appellant argues that he was tried and convicted for the crime of first degree robbery without a proper indictment. He alleges that the original indictment charging him with first degree robbery had been amended to "attempted robbery". He further argues that this court in Wesley v. State,448 So.2d 468 (Ala.Crim.App. 1984) had reversed and remanded his attempted robbery conviction and in the process ordered that the appellant be reindicted for the appropriate offense.
Appellant's original conviction in this cause was based on a guilty plea to the crime of attempted robbery after he had been indicted for robbery in the first degree. This court reversed that conviction on the basis that attempted robbery was no longer a lesser included offense of robbery under the general attempt statute and therefore his conviction was invalid. SeeWesley, supra at 469.
Normally when one is convicted of a lesser included offense under the indictment, they are acquitted of the greater offense originally charged. See Argo v. State, 43 Ala. App. 564,195 So.2d 901, cert. denied, 280 Ala. 707, 195 So.2d 909 (1967), cert. denied, 389 U.S. 865, 88 S.Ct. 129, 19 L.Ed.2d 136
(1967).
Further, one cannot be retried upon an indictment so defective that no valid conviction can be rendered and the defendant should be reindicted. See Petty v. State,414 So.2d 182 (Ala.Crim.App. 1982).
In the present case, the appellant was convicted in the original proceedings on a guilty plea to an offense which was not a lesser included offense contained under the indictment in question. This court reversed that conviction as being invalid. The indictment in this case was not amended as argued by appellant. This court did not find the original indictment to be defective in Wesley, supra. Since the appellant was not convicted of a lesser included offense, he was not acquitted of the greater offense and further prosecution under the original indictment was not barred by the operation of the law of double jeopardy. Moreover, this court did not order that the appellant be reindicted after his original conviction was overturned. This court merely stated that the factual circumstances of this case might support a conviction for any of the three degrees of robbery and if the State chose to do so they could reindict the appellant for a lesser offense than robbery in the first degree if the facts dictated such.
In summary, this appellant was properly tried under the original indictment after reversal of his plea of guilt to an offense *Page 1160 
which was no longer a lesser included offense under the indictment.
 III
Appellant contends that the trial court committed error in imposing a greater sentence on him after he had been "successful on his appeal."
The appellant was originally sentenced to a term of five years in the penitentiary on a plea of guilty to attempted robbery. However, before judgment and sentence were pronounced by the court on the plea of guilty, appellant attempted to withdraw his guilty plea which was denied by the trial court. Appellant appealed this decision. This court reversed the conviction of appellant on the basis that the general attempt statute is no longer applicable to robbery offenses. See Wesleyv. State, 448 So.2d 468 (Ala.Crim.App. 1984). This court remanded this cause to the circuit court for further proceedings not inconsistent with the opinion.
Upon this court's decision in Wesley, supra, the appellant was tried on the original indictment of robbery in the first degree, convicted, and sentenced to ten years in the penitentiary.
Appellant argues that the trial court's action in sentencing him to ten years is in violation of the United States Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711,89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). We do not agree. NorthCarolina v. Pearce does not hold that one may not be sentenced to a greater term in the penitentiary upon retrial of the same offense which was overturned by the appellate courts. To the contrary, North Carolina v. Pearce holds that a trial judge is not constitutionally precluded from imposing greater sentence, however, where a greater sentence is imposed, credit must be given for time already served by the appellant.
The case at bar is, therefore, distinguishable from NorthCarolina v. Pearce, supra. The appellant in this cause is not tried for the same offense on retrial. His original conviction was held invalid by this court because such offense was no longer a lesser included offense under the indictment as heretofore stated. The appellant originally entered a guilty plea to the offense of attempted robbery. After reversal of this conviction for the reasons stated above, he was charged, tried and convicted of a different offense — robbery in the first degree. The trial judge did not violate appellant's constitutional rights in imposing a greater sentence in this cause.
 IV
The appellant contends that his right to cross-examination of witnesses was erroneously limited by the trial court in two specific instances.
During cross-examination of State witness Ann Broughton, appellant's counsel was trying to elicit evidence of the appellant's business relationship with the victim of the robbery. Mrs. Broughton had testified that appellant had credit with the store and that he had done business at the store for eight to ten years. Appellant's counsel then asked the following question: (R. 15).
"Q. He had always paid you, had he not?" The State objected to this question and the trial court sustained the objection.
During cross-examination of State witness Carrie Mae Calhoun, appellant's counsel asked, "Mrs. Calhoun, isn't it a matter of fact that you have been harassed about this case. . . ." The trial court sustained the State's objection to this question on the grounds that "no evidence to that effect" had been presented. (R. 40).
It should be noted that the range and extent of the cross-examination of a witness is a matter within the sound discretion of the trial court, and, if the trial court determines that a question is not on a material issue in the case or is irrelevant, this court should not reverse the determination, unless the record reveals a clear abuse of discretion by the trial court. Turner v. State, 48 Ala. App. 754, 265 So.2d 885 (1972); Maund v. State, 361 So.2d 1144
(Ala.Crim.App. 1978); Coburn v. State, *Page 1161 424 So.2d 665 (Ala.Crim.App. 1982). A review of the record in this cause reveals that the trial court did not abuse its discretion in sustaining the objections to the questions posed and therefore this determination will not be overturned.
 V
The appellant contends that the trial court erred to reversal in questioning a State's witness. He contends that the court's questions were leading, suggestive and prejudicial and created an undue influence upon the jury. The appellant specifically complains of two instances in which the trial court questioned State witness Carrie Mae Calhoun.
 A
When appellant's counsel had concluded his cross-examination of this witness, the trial judge began asking a series of questions designed to determine when the appellant left Calhoun's house on the morning of the robbery. (R. 22-26).
While the questions posed by the trial judge may have been somewhat leading, such questions were not prejudicial to the appellant. Appellant's counsel did not object to any of the questions asked of Calhoun by the court and, in the absence of an objection and adverse ruling, this court has nothing before it to review. Hinkle v. State, 50 Ala. App. 215, 278 So.2d 218
(1973). B
The appellant further argues that the trial court erred in questioning witness Calhoun about a conversation she had with appellant on the day before trial (R. 43-44). The court asked such questions only after direct examination and cross-examination of Calhoun on this subject. The same testimony which the appellant now argues was prejudicial, as being elicited by the trial judge, was elicited by the State on direct examination. (R. 38-39). The record reveals that the witness was not responding to the questions posed at the time the court began to question her.
"In the interest of justice, a trial judge is given the authority to pose questions to a witness for the purpose of clarifying the issues for the jury's consideration and to aid in the orderly conduct of the trial process. This is a long observed rule. See Johnston v. City of Birmingham, 338 So.2d 7
(Ala.Cr.App. 1976)." Richardson v. State, 403 So.2d 297 (Ala. 1981); Smith v. State, 447 So.2d 1327 (Ala.Crim.App. 1983), affirmed, 447 So.2d 1334 (Ala. 1984). "`[T]he solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, . . . to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to one party or the other.' Brandes v. State, 17 Ala. App. 390,391, 85 So. 824 (1920), quoted in Blaylock v. State,411 So.2d 1299, 1302 (Ala.Cr.App. 1982)." Smith v. State, supra at 1331.Sprinkle v. State, 368 So.2d 554 (Ala.Crim.App. 1978), cert. quashed, 368 So.2d 565 (Ala. 1979), imposes upon the trial judge a standard of fairness and impartiality in propounding questions to witnesses. A careful review of the record in this cause reveals that the trial judge did not violate this standard and did not prejudice the appellant by his action.Hinkle v. State, 50 Ala. App. 215, 278 So.2d 218 (1973).
Moreover, the evidence elicited by the trial judge was cumulative and his overruling appellant's objection to his questions was proper in this instance.
 VI
The appellant contends that the trial court erred in refusing to give four of his written requested charges. A review of the record indicates that the failure of the trial court to give such requested charges was neither objected to nor an exception taken at the conclusion of the court's oral charge as required by Allen v. State, 414 So.2d 989 (Ala.Crim.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982). The *Page 1162 
failure to so object or except precludes this court's review of this matter. Allen, supra; Coleman v. State, 423 So.2d 276
(Ala.Crim.App. 1982); Laffity v. State, 423 So.2d 280
(Ala.Crim.App. 1982); Campbell v. State, 423 So.2d 284
(Ala.Crim.App. 1982). See Rule 14, Temporary Rules of Criminal Procedure.
Moreover, a further review of the court's oral charge reveals that such requested charges were "substantially and fairly" covered by the court in his general charge to the jury. SeeLambeth v. State, 380 So.2d 922 (Ala.Crim.App.), reversed on other grounds, 380 So.2d 923 (Ala. 1979), on remand,380 So.2d 925 (Ala.Crim.App. 1979), cert. denied, 380 So.2d 926 (Ala. 1980); Jackson v. State, 414 So.2d 1014 (Ala.Crim.App. 1982);Williams v. State, 451 So.2d 411 (Ala.Crim.App. 1984). See also, Ala. Code § 12-16-13 (1975).
 VII
The appellant argues that the trial court erred to reversal in refusing to grant his motion for new trial and motion in arrest of judgment.
It is well settled in Alabama that the granting or refusing of a new trial is within the sound discretion of the trial judge, and, in reviewing that decision this court will "indulge every presumption in favor of the correctness thereof." Allenv. State, 382 So.2d 11 (Ala.Crim.App. 1979), cert. denied,382 So.2d 25 (Ala. 1980); Suggs v. State, 403 So.2d 303
(Ala.Crim.App.), cert. denied, 403 So.2d 309 (Ala. 1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982);Grace v. State, 445 So.2d 976 (Ala.Crim.App. 1983), cert. denied, 445 So.2d 976 (Ala. 1984). A careful review of the record in this cause reveals that the trial court did not abuse its discretion in overruling the motions.
A careful review of the transcript in this case reveals no error. This cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.