557 So.2d 13 (1988)
Ex parte James Lewis SMITH.
(Re James Lewis Smith v. State of Alabama).
86-1448.
Supreme Court of Alabama.
April 8, 1988.
Rehearing Denied June 24, 1988.
*14 John C. Cason, Montgomery, for petitioner.
Don Siegelman, Atty. Gen., and J. Randall McNeill, Asst. Atty. Gen., for respondent.
JONES, Justice.
The petitioner was arrested and indicted on charges of rape, burglary, and sodomy, all arising out of the same alleged incident. As a result of a plea bargain agreement, the sodomy charge was nol-prossed and the petitioner pleaded guilty to the charges of first degree rape and first degree burglary. After a sentencing hearing, the petitioner was sentenced to 30 years on each conviction, the sentences to run concurrently.
Subsequently, the petitioner filed a motion seeking to withdraw his guilty pleas, claiming that he did not enter the guilty pleas knowingly or voluntarily. The trial court denied this motion. The Court of Criminal Appeals, however, found that the petitioner had not been properly informed of the potential sentences before pleading guilty, reversed the conviction and sentences, and remanded the cause to the trial court. Smith v. State, 494 So.2d 182 (Ala. Cr.App.1986).
The State then moved to reinstate the charge of first degree sodomy. On remand, the case was reassigned to the same trial judge, and he granted the State's motion to reinstate the original indictment. After a hearing on a number of defense motions, trial was conducted on the merits of the case. The jury returned a verdict of guilty on all three counts. After a sentencing hearing, the petitioner was sentenced to life imprisonment for the conviction of first degree sodomy, which term was to run concurrently with a life term for the first degree burglary conviction. The petitioner was also sentenced to a term of 150 years for the conviction of first degree rape, that sentence to run consecutively to the other two sentences. The Court of Criminal Appeals affirmed the conviction, affirmed the life sentences for the sodomy and burglary convictions, and remanded to the trial court for resentencing on the rape conviction. 515 So.2d 14.
We granted the defendant's request for review of the Court of Criminal Appeals' judgment affirming the judgment of sentence that enhanced the petitioner's sentence for burglary from 30 years to life imprisonment. The 150-year sentence for rape and the life sentence for sodomy are not before us for review. We reverse and remand as to the enhanced sentence for burglary.
In the resentencing of the petitioner after remand and conviction, the trial court stated:
"The court finds that since I did not hear all the testimony during your plea and now at trial have heard all the testimony..., the court finds that it's proper to increase the [burglary] sentence beyond that which was given you on the plea bargain."
It is clear that the trial judge increased the petitioner's sentence because of his subjective observations and not because of any objective evidence of events *15 subsequent to the petitioner's first conviction. We adopt the langugage from Rice v. Simpson, 274 F.Supp. 116 (M.D.Ala.1967), affirmed, 396 F.2d 499 (5th Cir.1968), affirmed sub nom. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), as the applicable rule in Alabama:
"[T]here can be no increase in a sentence in a criminal case after the sentence is imposed.... To deny such protection to convicted criminals who elect to exercise their post-conviction remedies and do so successfully is unfair discrimination and does nothing except to serve to limit the use of post-conviction proceedings in the Alabama state courts by prisoners. It denies the prisoner the protection of his original sentence as a condition to the right of his appealing his conviction or exercising his post-conviction remedies."
274 F.Supp. at 122. See, also, Ex parte Tice, 475 So.2d 590 (Ala.1984).
In support of the affirmance of the petitioner's enhanced sentence in the burglary conviction, the State quotes the following language from North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969):
"A trial judge is not constitutionally precluded... from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's `life, health, habits, conduct, and mental and moral propensities.' Williams v. New York, 337 U.S. 241, 245 [69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949)]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in Williams v. New York, supra, that a state may adopt the prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime. Id., at 247 [69 S.Ct. at 1083]."
395 U.S. at 723, 89 S.Ct. at 2079-80.
The State's reliance on Pearce is misplaced. Indeed, in unmistakable terms, the holding in Pearce makes it abundantly clear that the authorization for an enhanced resentencing "in the light of events subsequent to the first trial" is an exception to the general rule that, absent such evidence, a sentence imposed at the first trial may not be enhanced upon reconviction at the second trial after the first conviction has been overturned on appeal and remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
MADDOX, BEATTY and ADAMS, JJ., dissent.
MADDOX, Justice (dissenting).
I do not believe that the trial court erred in enhancing the petitioner's sentence. In some respects, this case is similar to Wesley v. State, 481 So.2d 1155 (Ala.Cr.App. 1985), reversed and remanded, 481 So.2d 1162 (Ala.1985), on remand, 481 So.2d 1163 (Ala.Cr.App.1985). In that case, Wesley was indicted for robbery in the first degree, and that indictment was amended to charge attempted robbery. He pleaded guilty to that charge, but his plea was set aside on appeal because the general attempt statute was no longer applicable to robbery offenses. Wesley v. State, 448 So.2d 468 (Ala.Cr.App.1984). Wesley was retried on the same indictment, but for robbery in the first degree, and the Court of Criminal Appeals affirmed his conviction on that charge. This Court reversed that decision of the Court of Criminal Appeals, saying: "It follows that when the State of Alabama chose to try petitioner again on the void amended indictment, his conviction was erroneous. However, as stated in Wesley, supra, the State of Alabama is free to reindict petitioner for the appropriate offense. Williams v. State, 333 So.2d *16 613 (Ala.1976)." Ex parte Wesley, 481 So.2d 1162, 1163 (Ala.1985) (emphasis added). Implicit in this holding is the idea that Wesley could receive a higher sentence than was imposed when he pleaded guilty, because he could be tried for robbery I.
Furthermore, charge and sentence concessions can be made when an accused voluntarily enters a plea of guilty, and the principles of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), would not apply. Instead, the principles of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), would apply. The Supreme Court of the United States held in Brady that sentence concessions may be made constitutionally when persons plead guilty. The Court held:
"Brady's claim is of a different sort: that it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency and that a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof.
"... We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.
"... For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvioushis exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantagesthe more promptly imposed punishment after an admission of guilty may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof....
"... But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State...."
397 U.S. at 750-53, 90 S.Ct. at 1470-71.
Standard 14-1.8. of the American Bar Association Standards for Criminal Justice provides:
"(a) The fact that a defendant has entered a plea of guilty or nolo contendere should not, by itself alone, be considered by the court as a mitigating factor in imposing sentence. It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when consistent with the protection of the public, the gravity of the offense, and the needs of the defendant, and when there is substantial evidence to establish that:
"(i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;
"(ii) the concessions will make possible alternative correctional measures which are better adapted to achieving protective, deterrent, or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;
"(iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them; or
"(iv) the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct.
"(b) The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the protective, deterrent, or other purposes of the criminal law because the *17 defendant has chosen to require the prosecution to prove guilt at trial rather than to enter a plea of guilty or nolo contendere."
In this case, petitioner successfully attacked his guilty plea on the basis that the maximum possible sentence was not explained to him; his plea was not, therefore, knowingly and intelligently given.
It would appear to me that a petitioner should not be allowed to receive sentence concessions in return for a guilty plea and then, after a successful attack on that plea, bind the State to its original sentencing bargain if he is later convicted after a trial. Thus, a petitioner could go to trial and chance an acquittal knowing he could receive a sentence no harsher than he was originally given.
The facts of this case are dissimilar to North Carolina v. Pearce, in my opinion, and I would affirm the judgment of the Court of Criminal Appeals; consequently, I must respectfully dissent.
ADAMS, J., concurs.

ON APPLICATION FOR REHEARING
JONES, Justice.
APPLICATION FOR REHEARING OVERRULED.
ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and MADDOX, BEATTY and ADAMS, JJ., dissent.
MADDOX, Justice (dissenting from denial of rehearing).
The majority denies the State's application for rehearing without comment, apparently on the ground that the State has presented nothing new for the Court to review. I believe the State has shown in its brief why the case of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is not applicable here. Because the majority fails to distinguish cases cited in the State's brief that indicate to me that we should grant rehearing in this case, I take this opportunity to extend the dissent which I filed on original deliverance. In my opinion, the Supreme Court of the United States has refused to broaden the scope of Pearce, especially in fact situations such as that presented here.
In Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the defendant, with counsel, and the prosecutor, entered into plea negotiations whereby the prosecutor offered to recommend a five-year sentence if the defendant would plead guilty as charged to uttering a forged instrument. The prosecutor told the defendant that if he did not plead and save the court the inconvenience and necessity of a trial, he would return to the grand jury and seek an indictment under the habitual offender law, subjecting the defendant to a mandatory sentence of life imprisonment. The defendant rejected the offer, and the prosecutor obtained an indictment charging him under the habitual offender law. The defendant was subsequently tried and convicted and sentenced to life imprisonment. The defendant then challenged the prosecutor's actions, claiming it was an impairment of his constitutional rights to a trial. Id. at 359, 98 S.Ct. at 665. The Supreme Court found Pearce to be distinguishable. In Pearce, the State unilaterally imposed a penalty upon a defendant who had chosen to exercise his right to appeal his original conviction. The Court found this was a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power." Id. at 362, 98 S.Ct. at 667. The Court further stated:
"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort ... and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `patently unconstitutional.'... But in the `give-andtake' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

*18 Plea bargaining flows from `the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial."
Id. at 363, 98 S.Ct. at 668 (citations omitted).
The Court found the prosecutor's action to be constitutional, stating that a "rigid constitutional rule" prohibiting a prosecutor from acting forthrightly in his dealings with the defense "could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged." Id. at 365, 98 S.Ct. at 669.
Although Bordenkircher dealt with prosecutorial vindictiveness rather than judicial vindictiveness, its reasoning is persuasive in the instant case. Here, as in Bordenkircher, the petitioner was given the option of either accepting the plea bargain or insisting upon trial. Further, just as the defendant in Bordenkircher was aware of the consequences of rejecting the prosecutor's offer of a plea bargain, the petitioner in this case was aware of the consequences of setting aside the plea bargain. The supplemental transcript indicates that the petitioner was aware that the sodomy charge was nol-prossed only because of his guilty plea. Additionally, he was aware that the maximum sentence he could receive for burglary I was life imprisonment and that that was the maximum sentence for rape I as well. As is the custom where a court sentences an accused following a guilty plea, the court in this case displayed leniency in sentencing the petitioner to concurrent sentences of 30 years for burglary I and rape I. However, petitioner chose to forgo this leniency, and by appealing his conviction, withdrew his plea, thus tacitly repudiating his plea bargain agreement. See Moore v. Foti, 546 F.2d 67 (5th Cir. 1977). Thus, petitioner chose to subject himself to the possibility of receiving life sentences for rape I and burglary I if convicted and having reinstated the sodomy I charge with its maximum sentence of life imprisonment.
The Supreme Court of the United States further narrowed the scope of Pearce in United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In Goodwin, the Court did not find prosecutorial vindictiveness where the prosecutor charged a misdemeanor defendant with a felony after he made a demand for a jury trial. In Ricketts, the defendant was allowed to plead guilty to second degree murder in exchange for his testimony against several co-defendants. Subsequently, the defendant repudiated the agreement by refusing to testify at the co-defendants' retrial. The prosecutor reinstated the original first degree murder charge against the defendant. The defendant was tried, convicted, and sentenced to death. The Supreme Court upheld the conviction finding that the defendant had chosen to face the possibility of the death penalty by repudiating the plea agreement. Id. 483 U.S. at 11, 107 S.Ct. at 2686.
The Fifth Circuit Court of Appeals also has applied the analysis of Pearce and Bordenkircher to instances of alleged prosecutorial vindictiveness, and that court has also applied this reasoning to the analogous issue of judicial vindictiveness.
In Foti, supra, the defendant sought habeas corpus relief in federal court to stop the State from reinstating first degree murder charges against him. The defendant, a juvenile, was initially charged with first degree murder but pleaded guilty to murder in the second degree pursuant to a plea bargain. However, the defendant successfully challenged his conviction in the appellate courts, and upon remand the State reinstituted the first degree murder charge. In his federal habeas corpus petition, the defendant asserted that this action placed him in double jeopardy. The Fifth Circuit rejected this argument and stated that the defendant's successful challenge to his plea bargained sentence was a "tacit repudiation of the bargain, allowing the government to prosecute him on the greater charge." 546 F.2d at 68.
Although Foti dealt with double jeopardy issues, its reasoning is useful in the instant case. Like the defendant in Foti, the petitioner *19 in this case successfully challenged his plea bargained conviction and sentence because he was obviously unsatisfied with the sentence initially imposed. Foti held that in such an instance, the defendant's action is a "tacit repudiation" of the plea bargain agreement and he must face the consequences of his decision.
Like the defendant in Foti, the petitioner in this case repudiated the plea agreement. By this action, he not only permitted the State to reinstitute the sodomy I charge, but also permitted the trial court to enhance his sentence, because the sentence initially imposed was at least partly the result of leniency shown because he did not inconvenience the court and cause embarrassment to the victim when he chose to plead guilty to the charges rather than to stand trial.
In Frank v. Blackburn, 646 F.2d 873 (5th Cir.1980), the analysis of Bordenkircher was applied to the issue of judicial vindictiveness. In Frank, the defendant attacked his sentence on the ground that the trial judge impermissibly increased his sentence because he rejected a plea bargain offer and elected to stand trial. The trial court offered a 20-year sentence if the defendant would plead guilty to the charge, but the defendant opted to stand trial. Upon conviction, he was sentenced to 33 years. The federal district court denied habeas corpus relief, but a three-judge panel of the Fifth Circuit reversed, finding that the defendant was penalized by the state court because he exercised his right to stand trial. The court later decided to rehear the case en banc "because of its potentially devastating impact upon the plea bargaining process." 646 F.2d at 875. A majority of the en banc court found that no constitutional rights were violated in the conviction and sentencing of the defendant.
In reaching its decision, the court noted the advantages of the plea bargaining process, which it found to expedite justice and to conserve judicial resources. 646 F.2d at 878. The court agreed with the defendant's assertion that a person cannot be punished simply for exercising his constitutional right to stand trial, but the court did not agree that the mere imposition of a longer sentence than defendant would have received had he pleaded guilty automatically constitutes such punishment. Id. at 883. A defendant is free to accept or reject the offer of the State. Once it is rejected, however, the defendant cannot complain that the denial of the benefits of the offer he rejected constitutes punishment or evidences judicial vindictiveness. "To accept such an argument is to ignore completely the underlying philosophy and purpose of the plea bargaining system. If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial." Id. at 883.